UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JERRAINE CODRINGTON,

                       Plaintiff,

    -against-

CITY OF NEW YORK, et al.,

                       Defendants.

------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-01650 (SLT)(SMG)

**TOWNES, United States District Judge:**

    Plaintiff Jerraine Codrington ("Jerraine" or "Plaintiff") filed his amended complaint on July 18, 2012, alleging causes of action under 42 U.S.C. § 1983 and various state-law claims. (ECF No. 9.) These claims arise from an encounter between Plaintiff and police on October 26, 2011, and his subsequent arrest and detention. On December 31, 2013, the City of New York, New York City Police Department ("NYPD"), NYPD officers Christina Meehan ("Meehan"), Christopher Sigmon ("Sigmon"), and Michael Rogers ("Rogers") (collectively, "Defendants") moved this court for summary judgment. (ECF No. 36.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. LEGAL STANDARD

    Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Because the Court's role is limited in this respect, it may not make factual findings, determine credibility of witnesses, or weigh evidence." *Douglas*

*v. City of New York*, 595 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citations omitted). Rather, in determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## II. BACKGROUND

### A. Facts[1]

*Events leading up to the encounter*

The parties do not dispute the general facts leading up to Jerraine's arrest. Sometime before October 26, 2011, Jerraine took his twin brother Jerome's car, a Nissan Altima, without first asking Jerome's permission. (Pl.'s Local Rule 56.1 Statements of Material Facts ("Pl.'s 56.1 Stmt.") ¶ 1, ECF No. 34-1; Defs.' Local Rule 56.1 Statements of Material Facts ("Defs.' 56.1 Stmt.") ¶¶ 1–4, ECF No. 38.) Jerraine took the keys from an article of Jerome's clothing that Jerome had left on the floor of the apartment where the brothers stayed. (Pl.'s 56.1 Stmt. ¶ 1.) Jerraine had a learner's permit but no driver's license. (*Id.*; Defs.' 56.1 Stmt. ¶ 24.)

On the morning of October 26, 2011, Jerome's girlfriend, Stephanie Cofield ("Cofield"), called 911 to report Jerome's Nissan Altima as stolen. (Pl.'s 56.1 Stmt. ¶ 2; Defs.' 56.1 Stmt. ¶¶ 1–2, 5.) NYPD officers Christina Meehan and Christopher Sigmon responded to the call. (Defs.' 56.1 Stmt. ¶ 1.) Meehan and Sigmon traveled to Cofield's location. (Defs.' 56.1 Stmt. ¶ 33.) After Cofield described the car, Meehan and Sigmon canvassed the area. (Defs.' 56.1 Stmt. ¶¶ 34–35.) Unable to locate the car immediately, Meehan and Sigmon returned to Cofield's

---

[1] Unless indicated otherwise, the Court recites the facts below from the parties' Local Civil Rule 56.1 Statements of Material Facts and these facts are admitted by the opposing party, properly supported by the record, or deemed admitted for failing to provide proper factual opposition. *See* Local Civil Rule 56.1.

location and spoke with Cofield and Jerome. (Defs.' 56.1 Stmt. ¶¶ 35–37.) Jerome described his car to the officers and stated that he had not given Jerraine permission to use the car; Cofield also told the officers Jerraine had taken Jerome's car keys and car and that her purse and other property was in the car. (Defs.' 56.1 Stmt. ¶¶ 36–40.) Jerome also gave the officers Jerraine's name. (Defs.' 56.1 Stmt. ¶ 42.)

*The encounter*

Shortly after leaving Cofield and Jerome's location, Meehan and Sigmon saw Jerraine alone in Jerome's Altima. (Defs.' 56.1 Stmt. ¶¶ 45, 48.) Meehan recognized Jerraine. (Defs.' 56.1 Stmt. ¶ 46.) Jerraine had already parked the car next to the curb when the officers approached him. (Pl.'s 56.1 Stmt. ¶ 3.) Meehan and Sigmon approached Jerraine and asked whether he owned the Altima. (Pl.'s 56.1 Stmt. ¶ 4.) Jerraine told Meehan and Sigmon the car was not stolen but borrowed from his brother. (Pl.'s 56.1 Stmt. ¶ 4.) Meehan then reached into the vehicle to remove the keys. (Pl.'s 56.1 Stmt. ¶ 5.) As Meehan reached for the keys, Jerraine reached across the car to retrieve paperwork showing his brother, Jerome, owned the car. (Pl.'s 56.1 Stmt. ¶¶ 4–5.) Sigmon then grabbed Jerraine—who is 5 feet 5 inches tall and weighs approximately 105 pounds—and pulled him out of the car, causing Jerraine to hit his head on the ground and lose consciousness. (Pl.'s 56.1 Stmt. ¶¶ 4–5.) The parties dispute whether Jerraine attacked Sigmon. (*Compare* Pl.'s 56.1 Stmt. ¶¶ 4–5, *with* Defs.' 56.1 Stmt. ¶ 67.) While Jerraine remained unconscious, either Meehan or Sigmon handcuffed Jerraine, and Sigmon then dragged Jerraine onto the sidewalk. (Pl.'s 56.1 Stmt. ¶ 4; Defs.' 56.1 Stmt. ¶¶ 62, 65.) Jerraine suffered a laceration to his forehead, facial abrasions, and injuries to his left knee. (Pl.'s 56.1 Stmt. ¶¶ 12–13.) Medical records dated December 29, 2011, show that Jerraine's left knee

exhibited a decreased range of motion, swelling, and effusion over two months after the encounter. (Pl.'s 56.1 Stmt. ¶ 13.)

*Arrest, charges, & detention*

After the encounter, officers took Jerraine to the police station. (Pl.'s 56.1 Stmt. ¶ 7.) The arrest report charged Jerraine with unauthorized use of a vehicle without owner's consent; criminal possession of stolen property in the fifth degree; petit larceny; obstruction of governmental administration in the second degree; and resisting arrest. (Pl.'s 56.1 Stmt. ¶ 7; Defs.' 56.1 Stmt. ¶ 81.) The District Attorney's Office ultimately charged Jerraine with assault in the second degree; petit larceny; obstructing governmental administration in the second degree; and resisting arrest. (Pl.'s 56.1 Stmt. ¶ 9; Defs.' 56.1 Stmt. ¶ 83.) At arraignment, Jerraine's bail was set at $30,000, and he was remanded to Rikers Island. (Pl.'s 56.1 Stmt. ¶ 9; Defs.' 56.1 Stmt. ¶¶ 86–87.) On December 13, 2011, the Grand Jury returned a "No True Bill" and all criminal charges stemming from the October 26, 2011 encounter were dismissed. (Pl.'s 56.1 Stmt. ¶ 10; Defs.' 56.1 Stmt. ¶¶ 89–90.)

However, Jerraine had other unrelated criminal cases pending against him that predated the October 26, 2011 encounter. On October 3, 2011, Jerraine was arrested and arraigned on charges of petit larceny, criminal possession of marijuana, and unlawful possession of marijuana. (Defs.' 56.1 Stmt. ¶¶ 92–93.) On September 11, 2011, Jerraine was arrested and arraigned on charges of robbery and criminal possession of stolen property. (Defs.' 56.1 Stmt. ¶ 94.) On August 13, 2011, Jerraine was arrested and arraigned on a charge of criminal marijuana possession. (Defs.' 56.1 Stmt. ¶ 95.) Bail was set at $5,000 for the robbery and criminal possession of stolen property charges on December 6, 2011, and on December 12, 2011, bail was set at $1 for each of the charges of petit larceny, unlawful marijuana possession, and criminal

marijuana possession. (Defs.' 56.1 Stmt. ¶¶ 92–95.) On December 20, 2011, Jerraine posted

bail on the petit larceny and marijuana charges and was released on his own recognizance on the

robbery charge. (Defs.' 56.1 Stmt. ¶¶ 92–95.) On May 4, 2012, Jerraine pleaded guilty to

disorderly conduct charges under New York Penal Law ("NYPL") § 240.20 related to the

August 13 and October 3 arrests and received a sentence of time served. (Defs.' 56.1 Stmt. ¶¶

93, 95.)

## B. Procedural History

Plaintiff filed his original complaint on April 4, 2012, against the City of New York, the

NYPD, and Police Officers "John Doe" 1–2. (ECF No. 1.) On July 18, 2012, Plaintiff filed an

amended complaint identifying officers Christina Meehan, Christopher Sigmon, and Michael

Rogers. (ECF No. 9.) Plaintiff's amended complaint alleges causes of action pursuant to 42

U.S.C. § 1983 for false arrest, excessive force, and malicious prosecution; and state-law claims

for false arrest, malicious prosecution, negligence, assault, and battery.

On January 18, 2013, Plaintiff agreed to voluntarily dismiss the following claims: (1)

municipal liability under § 1983, as against the City of New York; (2) excessive force under §

1983, as against Rogers; and (3) state-law assault and battery, as against Rogers. (ECF No. 20.)

The Court entered an order of partial dismissal on February 28, 2013. (ECF No. 22.)

On December 31, 2013, Defendants filed this motion for summary judgment on all

claims. (ECF No. 36.) Defendants' motion also identifies several vague references in Plaintiff's

amended complaint to potential claims for conspiracy, violation of equal protection rights,

violation of due process rights, harassment, and violation of the right to be informed of the nature

and cause of the accusation against him. To the extent Plaintiff's amended complaint can be

read to assert these causes of action, Defendants seek dismissal on the grounds that Plaintiff fails

to plead these claims adequately or has abandoned these claims. Defendants also argue that officers Meehan, Sigmon, and Rogers are entitled to qualified immunity and that the City of New York is entitled to governmental immunity.

## III. DISCUSSION

### A. § 1983 and related state-law claims

To maintain a cause of action pursuant to § 1983, a plaintiff must show that the defendant, acting under color of state law, denied the plaintiff a constitutional or federal statutory right. 42 U.S.C. § 1983; *Bryant v. Maffucci*, 923 F.2d 979, 982–83 (2d Cir. 1991). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Defendants do not dispute that they acted under color of state law.

### 1. False arrest

Plaintiff asserts state and federal claims for false arrest. "A claim of false arrest covers the time period from arrest through arraignment, after which time the claim becomes one for malicious prosecution." *Marcano v. City of Schenectady*, No. 1:12-CV-00036, 2014 WL 3953198, at *12 (N.D.N.Y. Aug. 13, 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). The Court therefore considers Plaintiffs § 1983 and state-law false arrest claims together.

A false arrest claim requires the plaintiff to show that: "'(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent

to the confinement and (4) the confinement was not otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 335 N.E.2d 310 (1975)). Probable cause constitutes a complete defense to false arrest under both federal and New York law. *Weyant*, 101 F.3d at 852 (citations omitted). Probable cause "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (citations omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Defendants argue that Jerome and Cofield's statements to officers Meehan and Sigmon created probable cause.[2] (Mem. Supp. 4–7, ECF No. 37.) Under New York Penal Law § 165.05(1), a person is guilty of unauthorized use of a vehicle in the third degree when that person: "[k]nowing that he does not have the consent of the owner, . . . takes, operates, exercises control over, rides in or otherwise uses a vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know that he does not have such consent." New York Penal Law § 155.25 provides that "[a] person is guilty of petit larceny when he steals property." Before Jerraine's arrest, Jerome and Cofield told the officers that Jerraine took

---

[2] Defendants also argue probable cause existed based on Plaintiff's subsequent admissions in his deposition. Because probable cause must be determined based on the knowledge of the arresting officer at the time of the arrest, these subsequent statements cannot provide a basis for probable cause. *See Spruill v. Levy*, No. 04 Civ.7316(KMW)(JCF), 2008 WL 1744787, at *1 (S.D.N.Y. Apr. 11, 2008) (noting that "police may not rely on information gained post-hoc to show that probable cause existed at the time of arrest").

Jerome's car keys and car without permission[3]; described the car; and gave Plaintiff's name. Shortly after leaving Jerome and Cofield, the officers spotted Jerome's Nissan Altima, and officer Meehan recognized Plaintiff. The witness statements provided the officers probable cause to arrest Plaintiff for unauthorized use of a vehicle in the third degree and petit larceny. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (citation omitted)). Because probable cause existed for the arrest, Plaintiff's false arrest claims (federal and state) fail as a matter of law. *See Weyant*, 101 F.3d at 852 (citations omitted) (noting probable cause constitutes a complete defense to both federal and state false arrest claims).

### 2. Malicious prosecution

Plaintiff asserts claims of malicious prosecution pursuant to both § 1983 and state law. A malicious prosecution claim under New York law requires the plaintiff to show: "(1) that the

---

[3] Plaintiff states that Jerome "never told [the police] plaintiff did not have permission to use the car." (Pl.'s 56.1 Stmt. ¶ 2.) Plaintiff cites two excerpts from Jerome's deposition to support this statement (*Id.* (citing Jerome Codrington Dep. 39:13–19, 62:23–63:3, ECF No. 34-6)). In the first excerpt Jerome does not dispute that he told the officers he had not given Jerraine permission to use the car.

> Q: Besides telling the officers that you needed your car back and describing the car and telling them that you own the car and that you hadn't given [Jerraine] permission to take the car, did you tell them anything else?

> A: Yes, I did not – I said I did not want him arrested, that I just want the car back.

(Jerome Codrington Dep. 39:13–19, ECF No. 34-6.) The second excerpt describes a conversation between Jerome and officer Rogers that took place after Jerraine's arrest and therefore has no bearing on probable cause. *See Jaegly*, 439 F.3d at 153 ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."). Because Plaintiff's own cited testimony demonstrates that the officers knew Plaintiff lacked permission to drive the car before his arrest, there exists no dispute as to "the pertinent events and the knowledge of the officers," and this court may determine probable cause as a matter of law. *See Weyant*, 101 F.3d at 852 (citation omitted).

defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citation omitted). "Because there are no federal rules of decision for adjudicating § 1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. § 1988 to turn to state law." *Conway v. Vill. of Mount Kisco, N.Y.*, 750 F.2d 205, 214 (2d Cir. 1984). In addition to the state-law elements, a § 1983 malicious prosecution claim requires an additional showing of "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Defendants challenge each element but that the proceeding terminated in Plaintiff's favor.

### i. Initiation

To satisfy the initiation element, a plaintiff must normally show that the "defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (quoting *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696, 583 N.Y.S.2d 283, 284 (2d Dept. 1992)). Normally, "'[o]ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding.'" *Id.* (quoting *Rohman*, 215 F.3d at 217)). But a different standard applies to police officers than to laypersons.

The Second Circuit has recognized that "'[a]pplying the layperson standard to the police would mean that law enforcement officers would never be liable for malicious prosecution.'" *Cameron v. City of New York*, 598 F.3d 50, 64 (2d Cir. 2010) (quoting *Llerando-Phipps v. City*

*of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005)). Thus, "[i]n malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." *Mitchell*, 434 F. Supp. 2d at 227 (citation omitted). "Further, [a]lthough there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Id.* (citation and internal quotation marks omitted). Thus, police officers alleged to have maliciously misled prosecutors cannot benefit from an "independent judgment" defense. *See Cameron*, 598 F.3d at 64.

Drawing all reasonable inferences in Plaintiff's favor, a reasonable jury might conclude Meehan and Sigmon provided false information that was used to initiate the proceedings against Plaintiff. *See Llerando-Phipps*, 390 F. Supp. 2d at 383 (denying summary judgment where a factual dispute existed as to whether officers provided false information). Although Defendants argue Rogers only forwarded information obtained from other sources, the submissions before the Court do not indicate whether Rogers knew the information from Meehan and Sigmon was, or was not, false. This fact issue precludes summary judgment as to Rogers. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (reversing summary judgment where a reasonable jury could have found that an officer knowingly forwarded a false statement to prosecutors). The Court therefore may not grant summary judgment on this basis.

**ii. Probable cause**

Probable cause constitutes a complete defense to a malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citation omitted); *see also Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (noting probable cause inquiry for malicious prosecution is essentially the same as probable cause to arrest "except that the evaluation is made in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest").

Courts within the Second Circuit have found that "'[a]bsent new countervailing facts, probable cause for arrest establishes probable cause for prosecution.'" *Harper v. Port Auth.*, No. 05 Civ. 5534(BSJ), 2009 WL 398127, at *4 (S.D.N.Y. Feb. 18, 2009) (citations omitted). Defendants thus argue that because probable cause existed for Plaintiff's initial arrest, that same probable cause now defeats Plaintiff's malicious prosecution claim. However, a malicious prosecution claim turns not on the arrest charges but on the charges pressed at arraignment or thereafter, each of which "must be independently supported by probable cause." *See Espada*, 522 F. Supp. 2d at 554 n.10 (citation omitted); *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted").

The criminal complaint charged Plaintiff with the following offenses: (1) assault in the second degree; (2) petit larceny; (3) obstructing governmental administration in the second degree; and (4) resisting arrest. (Mindrutiu Decl. Ex. D, ECF No. 39-4.) This Court already found probable cause existed to arrest Plaintiff for petit larceny. Probable cause thus constitutes

a complete defense to Plaintiff's malicious prosecution claim as to the petit larceny charge only. However, because the parties dispute the facts relevant to the three remaining charges—the encounter between Plaintiff and the officers—the Court may not determine probable cause as a matter of law. *See Weyant*, 101 F.3d at 852 (citation omitted); *see also Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (noting that under New York law probable cause is a jury question where the relevant facts are disputed).

### iii. Malice

"Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation omitted). "New York law considers the lack of probable cause and the presence of malice closely related." *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (citation omitted). Malice may be inferred from a finding that defendants lacked probable cause to initiate proceedings. *Id.* (citation omitted).

This Court's finding that probable cause presents a jury question "suggests that the existence of malice cannot be resolved through summary judgment." *See id.* (citation omitted). Further, "New York courts traditionally consider the issue of malice to be a jury question." *Id.* (citations omitted). The Court therefore finds Defendants are not entitled to summary judgment on this basis, and Plaintiff's state-law malicious prosecution claim survives summary judgment, except inasmuch as the claim is based on the petit larceny charge.

### iv. Post-arraignment liberty restraint

Lastly, Defendants argue that Plaintiff has failed to show the post-arraignment liberty restraint necessary for a § 1983 malicious prosecution claim. Specifically, Defendants point to

the fact that Plaintiff was held on bail on unrelated charges as of December 6, 2011. Defendants also argue that the time Plaintiff spent in custody is not attributable to the charges implicated by Plaintiff's malicious prosecution claim because Plaintiff later pleaded guilty to unrelated charges for which he received a sentence of time served. (Mem. Supp. 14–15, ECF No. 37.) These arguments, which Defendants do not support with any cited authority, lack merit.

"Incarceration, of any duration, represents a significant deprivation of liberty, sufficient to implicate the Fourth Amendment." *Allen v. City of New York*, 480 F. Supp. 2d 689, 718 (S.D.N.Y. 2007). Defendants point to no evidence that Plaintiff would have been detained at all absent the charges Defendants initiated against him as a result of the October 26 encounter. Rather, Defendants rely on speculation. Even assuming Plaintiff would have been detained on the unrelated charges, "this Court will not presume that the time and scope of his detention would have been identical to his actual detention." *See Matheis v. Fritton*, No. 02-CV-13S, 2007 WL 4373124, at *3 (W.D.N.Y. Dec. 7, 2007). Thus, Plaintiff's § 1983 malicious prosecution claim survives summary judgment, except inasmuch as the claim is based on the petit larceny charge.

### v. Qualified immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's malicious prosecution claim. (Mem. Supp. 24–26, ECF No. 37.) The Second Circuit has described the requirements for qualified immunity:

> A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

*Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) (citation omitted). "Objective reasonableness is established if 'the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality' of the official's actions." *Allen*, 480 F. Supp. 2d at 710 (citation omitted). Although courts should resolve the qualified immunity issue as early as possible, "summary judgment is not appropriate when there are material factual disputes." *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (citation omitted).

Defendants do not challenge that freedom from malicious prosecution was a clearly established right. *See Bonide Prods., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) ("[T]he right to be free from malicious prosecution is a clearly established right."); *Smart v. City of New York*, No. 08cv2203 (HB), 2009 WL 862281, at *6 (S.D.N.Y. Apr. 1, 2009) ("Filing a false police report violates clearly-established rights of which an objectively reasonable police officer should surely be aware."). Qualified immunity thus turns on whether "'it was objectively reasonable for [the officers] to believe that [their] actions were lawful at the time of the challenged act.'" *See Allen*, 480 F. Supp. 2d at 710 (citation omitted). However, because material questions of fact remain in dispute regarding the reasonableness of the officers' conduct—whether they provided false information—this Court may not reach qualified immunity on summary judgment. *See Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 339–40 (E.D.N.Y. 2006) (denying summary judgment on basis of qualified immunity where dispute existed as to whether officers had fabricated probable cause to prosecute).

### vi. Damages

Alternatively, Defendants argue that this Court must limit the time period for which Plaintiff may recover damages because he waived his rights under New York Criminal Procedure Law § 180.80 and requested an adjournment. (Mem. Supp. 12–14, ECF No. 37.)

Defendants chiefly rely upon two cases: *Romeo v. County of Oneida*, 135 A.D.2d 1099, 1100, 523 N.Y.S.2d 318 (4th Dept. 1987) and *Rondon v. City of New York*, 2012 N.Y. Misc. LEXIS 3100 (N.Y. Sup. Ct. June 20, 2012). Neither case is persuasive.

In *Romeo*, the court found that the plaintiff could not maintain his claims for false arrest, false imprisonment, and malicious prosecution for a number of reasons—including the plaintiff's consent—but never reached the question of damages Defendants assert in this case. *Romeo*, 135 A.D.2d at 1100. *Rondon* likewise never reached damages. Instead, the *Rondon* court found that the plaintiff could not maintain his actions for false imprisonment and malicious prosecution because probable cause existed for his arrest. *Rondon*, 2012 N.Y. Misc. LEXIS 3100, at *5. The *Rondon* court cited *Romeo* in finding that the plaintiff's consent was fatal to his false imprisonment claim. *Id.*

Decisions from other New York courts counsel against so limiting Plaintiff's damages. For example, New York courts have noted that dismissal of a case on speedy trial grounds may satisfy the "favorable termination" necessary for a malicious prosecution claim. In so finding, courts have reasoned that the societal interest in "encourage[ing] private persons to aid in the enforcement of the law," *Loeb v. Teitelbaum*, 77 A.D.2d 92, 101–02, (2d Dept. 1980), "does not extend so far as to compel one charged with a criminal offense to waive his constitutional or statutory right to a speedy trial in order to preserve his right to civil retribution for a demonstrated wrong," *Lenehan v. Familo*, 79 A.D.2d 73, 77 (4th Dept. 1981). By the same token, a defendant who later may seek civil retribution should be entitled to defend in the same manner and by the same strategy available to any other defendant. To force such defendants to choose between mounting a full defense with the strategy of their choosing or civil recovery later on would be repugnant to this nation's general principles of justice.

Moreover, the damages recoverable for malicious prosecution are not tied solely to the duration of imprisonment but also include injury to reputation, character, and feelings. *See Loeb*, 77 A.D.2d at 104–05; *see also* Restatement (Second) of Torts §§ 670, 671 (1977) (listing damages recoverable on cause of action for malicious prosecution). The Court therefore denies Defendants' request to limit Plaintiff's damages.

### 3. Excessive force

Plaintiff's excessive force claim arises from his arrest, which he alleges violated his Fourth Amendment right against unreasonable seizures. The Court therefore analyzes Plaintiff's excessive force claim under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard" (emphasis in original)).

Where a plaintiff alleges excessive force, the court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citation omitted). This fact-specific inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citation omitted). "In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *Graham*, 490 U.S. at 397). Three factors help guide this analysis: "the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *See Graham*, 490 U.S. at 396.

Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Fourth Amendment principles recognize that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (internal citation omitted). Courts must also make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Because this inquiry is necessarily fact-specific, summary judgment is inappropriate "unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."
*Amnesty Am.*, 361 F.3d at 123 (citation omitted).

Defendants argue that even under Plaintiff's version of the facts, Meehan and Sigmon's use of force qualifies as *de minimus* and thus cannot sustain an excessive force claim as a matter of law. (Mem. Supp. 16–17, ECF No. 37.) Although not every push or shove violates the Fourth Amendment, the Second Circuit has "permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004); *see also Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Put simply, the Second Circuit "does not appear to place a

demanding requirement on excessive force plaintiffs to demonstrate injury." *Felmine v. City of New York*, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268, at \*19 (E.D.N.Y. Sept. 29, 2011).

### Officer Sigmon

In this case, Plaintiff states that when he reached across the vehicle to retrieve paperwork proving his brother's ownership of the car, Sigmon grabbed him and pulled him from the vehicle in a manner causing his head to strike the ground. As a result, Plaintiff lost consciousness. Sigmon testified that Plaintiff hit him; a fact Plaintiff disputes. While Plaintiff was unconscious, either Meehan or Sigmon handcuffed Plaintiff before Sigmon dragged Plaintiff by his arms to the curb. In addition to the loss of consciousness, Plaintiff alleges that Sigmon's use of force caused a large laceration to his forehead, facial abrasions, and an injury to his left knee. Medical records show that Plaintiff's left knee still exhibited decreased range of motion and swelling over two months after the incident. Given the extent of Plaintiff's injuries, Sigmon's use of force does not qualify as *de minimus* and Plaintiff's excessive force claim against Sigmon survives summary judgment. *See Maxwell*, 380 F.3d at 108 (noting that the Second Circuit has permitted claims alleging "only bruising" to survive summary judgment).

### Officer Meehan

Defendants argue that even if Plaintiff's claim against Sigmon survives, this Court must in any event grant summary judgment as to Meehan for lack of personal involvement. (Mem. Supp. 17–18, ECF No. 37.) The Court agrees.

The Second Circuit has consistently held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (citation omitted). "The Second Circuit has defined 'personal involvement' to mean direct participation,

such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Garnett v. City of New York*, No. 13–cv–7083–GHW, 2014 WL 3950904, at *7 (S.D.N.Y. Aug. 13, 2014) (citing *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). "A police officer is personally involved in the use of excessive force if [she] either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though [she] had a reasonable opportunity to do so." *Russo v. DiMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (citation omitted).

In this case, the record shows that Meehan had no personal involvement in the use of force upon which Plaintiff bases his excessive force claim. Meehan's involvement in the altercation with Plaintiff consisted of either handcuffing Plaintiff or handing a set of handcuffs to Sigmon, who then handcuffed Plaintiff.[4] Even "tight handcuffing" generally does not give rise to an excessive force claim absent a showing of lasting injury. *See, e.g.*, *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441 (E.D.N.Y. 2012) (citation omitted). Here, Plaintiff does not complain about his handcuffing—the only action by Meehan that could qualify as direct participation. *See Russo*, 894 F. Supp. 2d at 414.

To the extent Plaintiff argues Meehan failed to intercede, that argument fails. Liability may attach on this basis "only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to

---

[4] Officer Meehan's deposition testimony suggests she may have been more involved than merely handcuffing Plaintiff or passing the handcuffs to Sigmon. Plaintiff's Local Civil Rule 56.1 Statement recognizes this testimony, (Pl.'s 56.1 Stmt. ¶ 6), but instead offers that Officer Meehan did nothing but handcuff Plaintiff or pass the handcuffs to Sigmon. Defendants do not dispute this characterization.

intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing, *inter alia*, *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

The conduct complained of here took place in a short amount of time while Meehan was occupied removing the keys from the vehicle. No words were exchanged to put Meehan on notice that Plaintiff's constitutional rights were potentially being violated. Under these facts no reasonable jury could find that Meehan had a realistic opportunity to intervene or that she could have known that Plaintiff's constitutional rights were being violated. *See O'Neill*, 839 F.2d at 11–12 (finding officer not liable for failure to intercede where "three blows were struck in such rapid succession that [the defendant officer] had no realistic opportunity to attempt to prevent them" and episode "was not . . . of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator").

### *Qualified Immunity*

Defendants argue that Sigmon acted reasonably in his use of force against Plaintiff and is therefore entitled to qualified immunity. (Mem. Supp. 25–26, ECF No. 37.) However, disputed facts relevant to Sigmon's use of force exist in this case: Plaintiff disputes Sigmon's testimony that Plaintiff attacked Sigmon during the encounter preceding Plaintiff's arrest. The existence of disputed facts prevents this Court from ruling on qualified immunity at this stage of the litigation. *See Allen*, 480 F. Supp. 2d at 710 (S.D.N.Y. 2007) (denying summary judgment on grounds of qualified immunity where there existed disputed facts material to the reasonableness determination); *Felmine*, 2011 WL 4543268, at *20 (denying qualified immunity at summary judgment because "the degree and reasonableness of the officers' use of force against the plaintiff remains an issue of disputed fact").

**B. State-law claims**

**1. Officer Rogers**

Defendants argue that this Court must dismiss the state-law claims against Rogers because Plaintiff failed to identify Rogers in the Notice of Claim. (Mem. Supp. 18–19, ECF No. 37.) State notice-of-claim requirements apply to state-law claims regardless of whether the claims are brought in state or federal court. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citation omitted). New York courts strictly construe notice-of-claim requirements, "and failure to abide by their terms mandates dismissal of the action." *Am. Tel. & Tel. Co. v. New York City Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990).

Whether plaintiffs must name individuals in the notice of claim is unsettled under New York law. *See Scott v. City of New Rochelle*, 44 Misc. 3d 366, 373, 986 N.Y.S.2d 819, 828 (N.Y. Sup. Ct. May 21, 2014) (recognizing split among New York courts and citing cases); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 397 (S.D.N.Y. 2013) ("The appellate courts in New York are currently split as to whether a Notice of Claim must specifically name individual municipal officers or employees in order for a plaintiff to subsequently maintain a lawsuit against them, and the Court of Appeals has not squarely addressed the question."). While the New York court of appeals has not ruled on this specific issue, it has provided the following guidance:

> "[T]he test of the sufficiency of a Notice of Claim is merely whether it includes information sufficient to enable the city to investigate. . . . Thus, in determining compliance with the requirements of General Municipal Law § 50–e, courts should focus on the purpose served by a Notice of Claim: whether based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the [claim]" (*Brown v. City of New York*, 95 N.Y.2d 389, 393, 718 N.Y.S.2d 4, 740 N.E.2d 1078 [2000] [internal quotation marks and citations omitted]).

> Put another way, the "plain purpose" of statutes requiring pre-litigation notice to municipalities "is to guard them against imposition by requiring notice of the circumstances . . . upon which a claim for damages is made, so that its authorities may be in a position to investigate the facts as to time and place, and decide whether the case is one for settlement or litigation" (*Purdy v. City of New York*, 193 N.Y. 521, 523, 86 N.E. 560 [1908], *rearg. denied* 195 N.Y. 604, 89 N.E. 1111 [1909]).

*Rosenbaum v. City of New York*, 8 N.Y.3d 1, 10–11, 861 N.E.2d 43, 48 (2006) (alterations in original). Courts have held that "[a]s long as the Notice of Claim includes information sufficient to enable the city to investigate and identify the municipal employees involved, a failure to specifically name individual defendant employees should not bar suit against them." *Chamberlain*, 986 F. Supp. 2d at 397 (internal quotation marks and citation omitted); *see also Verponi v. City of New York*, 31 Misc. 3d 1230(A), 930 N.Y.S.2d 177, 2011 WL 1991719, at *5 (N.Y. Sup. Ct. May 19, 2011) ("This issue is not whether the police officers were identified by name in the Notice of Claim, but whether they were described sufficiently for the City to be able to investigate the claim.").

Plaintiff's notice of claim specifically identifies Sigmon and Meehan and describes the encounter during which Plaintiff was injured, including the time and location of that altercation. (*See* Mindrutiu Decl. Ex. Z, ECF No. 39-26.) However, the notice of claim includes no information that would have put the City on notice to investigate Rogers's involvement. *Cf. Verponi*, 2011 WL 1991719, at *5 (finding notice of claim sufficient despite failure to name individual officers where notice "gave a sufficiently detailed description on the incident and the nature of Plaintiff's claims to enable the City to identify the officers involved and investigate her claims"). Accordingly, this Court must dismiss Plaintiff's state-law claims against Rogers.

**2. Assault and battery**

Defendants next argue that the undisputed facts require that this Court dismiss Plaintiff's state-law assault and battery claims against Meehan and Sigmon. (Mem. Supp. 19–20, ECF No. 37.) "Under New York law, '[a]n "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact,'" and "[a] 'battery' is an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (citations omitted).

"To succeed on an assault or battery claim in the law enforcement context, a plaintiff must demonstrate that defendants' conduct 'was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties.'" *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *13 (S.D.N.Y. Apr. 11, 2014) (citing *Torres–Cuesta v. Berberich*, 511 F. App'x 89, 91 (2d Cir. 2013)); *see also* N.Y. Penal Law § 35.30(1) (setting forth standard for law enforcement's use of force during arrest). "Essentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law." *Marcano v. City of Schenectady*, No. 1:12-CV-00036, 2014 WL 3953198, at *15 (N.D.N.Y. Aug. 13, 2014) (citation omitted). Because Plaintiff's arrest was lawful, Plaintiff must proffer evidence demonstrating the threat or use of force qualifies as objectively unreasonable in order to survive summary judgment. *See id.*

Here, the Court must dismiss Plaintiff's assault and battery claims against Meehan. As discussed above, Plaintiff has presented no evidence that Meehan said or did anything to place Plaintiff in fear of imminent harm or contact. Neither does there exist any evidence that Meehan touched Plaintiff other than possibly to handcuff him, which Plaintiff does not suggest was

performed unreasonably. *See Stokes v. City of New York*, No. 05-CV-0007(JFB)(MDG), 2007 WL 1300983, at *13 (E.D.N.Y. May 3, 2007) (noting that handcuffing during a lawful arrest does not give rise to claims for assault and battery absent "evidence to suggest that such acts were performed in an unreasonable manner (such as an unreasonable tightening of the handcuffs causing injury)"). However, since the degree and reasonableness of Sigmon's use of force against Plaintiff involves disputed facts, the Court denies summary judgment as to Plaintiff's assault and battery claims against Sigmon. These disputed facts likewise preclude this court from reaching qualified immunity at this stage. *See Jones v. Parmley*, 465 F.3d 46, 64 (2d Cir. 2006) (noting disputed material facts preclude finding of qualified immunity on summary judgment).

### 3. Negligence

Plaintiff's amended complaint includes general negligence claims against Meehan, Sigmon, and Rogers, in addition to negligence claims against the City of New York and NYPD. Defendants move for summary judgment against all of these claims.

*Officers Meehan, Sigmon, and Rogers*

A negligence claim brought under New York law requires the plaintiff to "show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (citations omitted). However, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing, *inter alia, Boose v. City of Rochester*, 71 A.D.2d 59, 62, 421 N.Y.S.2d 740, 744 (4th Dept. 1979)). The Court

therefore grants summary judgment on Plaintiff's negligence claims against Meehan, Sigmon, and Rogers.

### NYPD

Defendants argue that the NYPD must be dismissed as a defendant from this case because the NYPD is not subject to suit. The Court agrees.

The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. The NYPD thus does not constitute a suable entity. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (noting the NYPD is not a suable entity). The Court therefore dismisses this case as against the NYPD only.

### The City of New York

Lastly, Defendants argue that the City of New York is entitled to governmental immunity. Municipalities enjoy governmental immunity when "official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial." *Mon v. City of New York*, 78 N.Y.2d 309, 313, 579 N.E.2d 689 (1991). "This immunity extends to the actions of police officers engaged in law enforcement activities, provided that the officers' actions are not inconsistent with acceptable police practice." *Arias v. City of New York*, 22 A.D.3d 436, 437, 802 N.Y.S.2d 209 (2d Dept. 2005).

Although Defendants moved for summary judgment against Plaintiff's negligence claims on the bases discussed above, Plaintiff's opposition does not address these arguments. The Court therefore deems these claims as abandoned. *See Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (finding claims abandoned where plaintiff failed to address claims in

opposition to defendants' summary judgment motion); *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citation omitted)). Accordingly, the Court grants summary judgment against Plaintiff's negligence claims.

### C. Other claims

Plaintiff's amended complaint hints at additional claims not set out as separate causes of action, including conspiracy, violation of equal protection rights, violation of due process rights, harassment, and violation of the right to be informed of the nature and cause of the accusation against him. The memorandum in support of Defendants' motion for summary judgment argued these potential claims' deficiencies. (Mem. Supp. 22–23, ECF No. 37.) Defendants argue that Plaintiff's amended complaint relies upon conclusory statements and lacks sufficient factual allegations to state these claims. For example, if Plaintiff intended to bring an equal protection claim, such claim would fail for lack of a showing that he was treated differently from others similarly situated. *See Ostroski*, 443 F. Supp. 2d at 345 n.10 (deeming equal protection claim as abandoned and noting such claim would in any case fail "because the plaintiff has failed to allege or show that she was treated differently than others similarly situated"). Finally, because Plaintiff's opposition papers did not respond to these arguments, Defendants argue that Plaintiff has abandoned these claims. (Reply 1–2, ECF No. 40.)

Although the Court does not understand Plaintiff to assert these claims, to the extent Plaintiff intended to bring these claims, the Court deems them abandoned. *See Douglas*, 21 F. Supp. 2d at 393 (finding claims abandoned where plaintiff failed to address claims in opposition to defendants' summary judgment motion); *Lipton*, 315 F. Supp. 2d at 446 ("This Court may,

and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citation omitted)).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 36) is granted in part and denied in part. The following claims are dismissed: false arrest (state and federal); malicious prosecution (state and federal) to the extent based upon the petit larceny charge only; excessive force as against Meehan only; all state-law claims as against Rogers only; assault and battery as against Meehan only; negligence as against all Defendants; and, to the extent Plaintiff intended to bring these claims, any claims for conspiracy, harassment, violation of equal protection and due process rights, and violation of the right to be informed of the nature and cause of the accusation against him are deemed to be abandoned and are dismissed. The NYPD is dismissed from this case as a non-suable entity.

**SO ORDERED.**

/s/ Sandra L. Townes

SANDRA L. TOWNES
United States District Judge

Dated: February 27, 2015
Brooklyn, New York